STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. BRUCE MATLACK, DEFENDANT-APPELLANT.

Argued May 24, 1967—Decided July 6, 1967.

492

*Mr. James J. Casby, Jr.* argued the cause for defendant-appellant.

*Mr. Rudolph J. Rossetti,* Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. James G. Aiken,* Deputy Attorney General (Assistant Prosecutor), attorney).

The opinion of the court was delivered by

PROCTOR, J. Defendant was found guilty in the Camden County Court after a trial by jury of grand larceny, robbery, and atrocious assault and battery. The sentences entered on the record show terms of one to three years (suspended) for the grand larceny, two to three years (suspended) for the robbery, and ten to fifteen years for the atrocious assault and

battery (to be consecutive to a prior sentence). The Appellate Division, with the State conceding the point, set aside the conviction for grand larceny because the State had failed to prove the value of the property (an automobile) stolen. The court, with the State again offering no objection, vacated the sentence of ten to fifteen years for atrocious assault and battery and remanded for resentencing because the term given illegally exceeded the statutory maximum. *N. J. S. A.* 2A: 90–1 and *N. J. S. A.* 2A:85–6. Before argument of defendant's appeal in the Appellate Division, the trial judge by letter had informed the prosecutor and the court that: "The sentence for Robbery has been mistakenly made under the Atrocious Assault and Battery indictment and the sentence should be corrected." The Appellate Division held that the trial judge under *R. R.* 3:7–13(a) could "increase or decrease" any sentence within 20 days of the appellate mandate, and therefore the court did not consider whether the trial judge could correct the mistake by which the sentence for the robbery conviction was entered for the atrocious assault and battery conviction. The Appellate Division otherwise affirmed the convictions for robbery and atrocious assault and battery finding no reversible error. Defendant petitioned for certification, and we agreed to hear the appeal.

The State's first witness, Norman Nicolai, testified that on October 25, 1963 he was working alone in a gasoline service station in Collingswood. At about 10:00 A. M. a man came to the station and inquired about the price of snow tires. After some five minutes discussion of price and inspection of tires, and while the two men were in the station's office with Nicolai sitting at a desk and the man standing beside him, the man suddenly struck Nicolai on the head. Nicolai then grabbed the man's hands and said: "My God, man, you don't have to hit me, I'll give you the money." The man said: "I'll kill you, you'll get the cops." He then struck Nicolai some 14 or 15 times with a hammer. Nicolai then got under the desk, took the hammer from his assailant, and threw it across the room. While under the desk he emptied his pockets of money

(about $29) and tossed it on the floor at the man. When he got out from underneath the desk, his assailant struck him on the head with a large glass ashtray. Nicolai then managed to get out of the office, and ran through the garage to the outside. The man followed him out, unsuccessfully attempted to take an automobile, and then ran away. Although Nicolai did not see the man take the money, it was gone when Nicolai with the help of a passerby returned to the office.

In court Nicolai identified defendant as his assailant. He also testified that he had identified defendant as the assailant on the morning following the attack when defendant was brought to the hospital where Nicolai was receiving treatment for his injuries.

Mrs. Frances McGrath testified that shortly after 10:00 A. M. on October 25 she was at the home of Mrs. Winifred Traveline in Collingswood, about one block from the gasoline station. Mrs. Traveline's automobile was parked in the driveway with the keys in the ignition. Mrs. McGrath, on coming out of the house, saw a strange man at the car; the man got in and drove away despite her efforts to stop him. The man had blood and grease on his face and clothes.

In court Mrs. McGrath identified defendant as the man who took the car. She also said that on the afternoon of October 25 she identified defendant as the thief from a photograph shown to her by Detective Conroy of the Collingswood police. That evening she was taken to the police station with Mrs. Traveline and identified defendant who was then sitting in a room with Detective Conroy.

Mrs. Traveline confirmed the testimony of Mrs. McGrath about the theft of her car and in court identified defendant as the thief.

Detective Conroy testified that on October 25 he arrived at the gas station at about 10:15 A. M. in response to a call and began an investigation. After receiving descriptions of the culprit from the two women and a police officer who had spoken to Nicolai, Detective Conroy returned to police headquarters, obtained a photograph of defendant, and took this

to Mrs. McGrath. He said that she identified the photograph as showing the automobile thief. As a result of this information, he arrested defendant at his home. Conroy said that the shirt defendant was then wearing had small stains on the sleeve and tail.

That evening Detective Conroy took the two women to police headquarters. They stood in the hall looking through a one-way glass in an office door while he and defendant sat in the office. Conroy said that the two women identified defendant as the man who took the car.

Also that evening at the hospital Detective Conroy showed a photograph of defendant to Nicolai who identified it as showing his assailant. Conroy also testified that the next morning he took defendant to Nicolai's hospital room where Nicolai identified defendant as his attacker.

The State completed its case by introducing expert testimony to show that the shirt defendant was wearing when arrested had a small stain of human blood on the sleeve.

Defendant at the time of the trial was twenty-three years old and weighed 265 pounds. He did not deny that the several offenses were committed; rather, he sought to show that he was not the man who committed the acts because he was in bed asleep at his home in the City of Camden when they occurred. On his direct examination defendant acknowledged that he had prior convictions for larceny of a motor cycle and possession of stolen goods.

His mother, his wife, a boarder in the home, and he himself all gave testimony tending to show his presence at home that day until 12:30 P. M. and thereafter. His mother said that although she usually arose at 6:30 A. M. in order to get to work at 9:00 in Philadelphia, she did not awake on October 25 until 9:15 because her clock-radio was not working. She did not leave the house until 9:55, and saw her son in bed shortly before she left. The boarder testified that he left the house at 7:45 with the clock-radio which he was to have repaired that day, and returned with it around 12:20 when his playing of the radio apparently woke up the defendant.

Defendant's wife testified that she and her husband went to sleep at 10:00 P. M. the preceding night; that she first awoke when she heard defendant's mother preparing to leave; that she got up and returned to bed several times and that her husband was always in bed except for a brief moment when she woke him to answer the doorbell; that her husband immediately returned saying no one was at the door; and that her husband did not awake until 12:30 when the radio playing roused him. Defendant's mother and the boarder also said the weather that morning was foggy.

On rebuttal in response to evidence as to the weather conditions on the morning of October 25 offered by the defendant, the prosecutor introduced a United States weather report made at International Airport in Philadelphia. Mrs. McGrath, recalled, said that she knew the day was bright because she saw the sun reflected in defendant's blond hair with red highlights.

Although there was a sharp conflict in the testimony as to defendant's whereabouts on the morning of October 25, there was ample evidence from which the jury could conclude beyond a reasonable doubt that defendant was the man who committed the crimes.

On this appeal the defendant first contends that the admission of testimony by Nicolai and Mrs. McGrath about their prior identifications of defendant was error which deprived him of a fair trial. We have held that a prior identification, if made under circumstances precluding unfairness or unreliability, is admissible where the person making the prior identification is in court as a witness. *State v. Williams,* 39 *N. J.* 471, 489 (1963), *cert.* den. 382 *U. S.* 964, 86 *S. Ct.* 449, 15 *L. Ed.* 2d 366 (1965). See generally *Anno.,* 71 *A. L. R.* 2d 449 (1960). Rule 63(1) of the *Rules of Evidence* enacts the *Williams* rule in the following language:

"A statement is admissible if previously made by a person who is a witness at a hearing, provided it would have been admissible if made by him while testifying and the statement:

\* \* \* \* \* \* \* \*

(c) Is a prior identification of a party where identity is in issue, if made under circumstances precluding unfairness or unreliability." *P. L.* 1967, *ch.* 3 (effective date September 11, 1967).

Although defendant did not object at trial to the testimony about the prior identifications, he now argues that a prior identification of a single photograph or a single person is necessarily unreliable and unfair because in the absence of comparison a witness is very likely to say that an innocent person is the wrongdoer.

 While the use of photographs of several persons or a line-up of men is a helpful and desirable police technique, the absence of such a procedure does not in itself make a prior identification unfair or unreliable: the totality of the circumstances must be considered. *Stovall v. Denno,* 387 *U. S.* ——, 87 *S. Ct.* 1967, 18 *L. Ed,* 2d 1199 (1967); *State v. Fournier,* 91 *N. J. Super.* 477, 479 (*App. Div.* 1966); see *United States v. Chibbaro,* 361 *F.* 2d 365, 376–377 (*3d Cir.* 1966). The absence of comparison ordinarily goes only to the weight of the testimony and not to its admissibility. See *State v. Villegas,* 101 *Ariz.* 465, 420 *P.* 2d 940, 941 (*Sup. Ct. Ariz.* 1966); *People v. Knowles,* 35 *Cal.* 2d 175, 217 *P.* 2d 1, 3 (*Sup. Ct. Cal.* 1950); *People v. Brinkley,* 33 *Ill.* 2d 403, 211 *N. E.* 2d 730, 732 (*Sup. Ct. Ill.* 1965); *cf. Palmer v. Peyton,* 359 *F.* 2d 199, 202 (4 *Cir.* 1966). Prior identifications are admissible because, being made when the events and sensory impressions are fresh in the mind of a witness, they are likely to be correct. See *State v. Williams, supra,* 39 *N. J.,* at *pp.* 488–489 and 4 Wigmore, *Evidence* § 1130 (*3d ed.* 1940).

 We are satisfied that the prior identifications by the witnesses in the present case were made under circumstances which precluded unfairness and unreliability. The three eyewitnesses had ample opportunity to observe the man who committed the offenses. The two women identified the defendant as the culprit within hours of the events, and Nicolai identified him within a day. See *People v. Thompson,* 406 *Ill.* 555, 94 *N. E.* 2d 349 (1950). With the recollections and impressions fresh in their minds, as in the present case, wit-

nesses are likely to make identifications that will aid the jury in reaching a true verdict.

We hold that the testimony by the witnesses about their prior identifications was properly admitted.[1]

■ Defendant further argues that even if the witnesses could testify to their prior identifications, it was error to allow Detective Conroy to say that the witnesses had made a statement of such identifications because such testimony was objectionable as hearsay. The testimony of a third person as to a statement of prior identification by a witness does not involve the evils of hearsay because defendant's rights of confrontation and cross-examination are fully protected by the requirement of the *Williams* rule that the person who made the statement of prior identification be a witness at the trial. *Johnson v. State,* 237 *Md.* 283, 206 *A. 2d* 138, 142–143 (*C. A. Md.* 1965); *Gallegos v. People,* 157 *Colo.* 484, 403 *P. 2d* 864, 869 (*Sup. Ct. Colo.* 1965); *Preston v. Commonwealth,* 406 *S. W. 2d* 398, 403 (*C. A. Ky.* 1966); see Edmond M. Morgan, "Hearsay Dangers and the Application of the Hearsay Concept," 62 *Harv. L. Rev.* 177, 192–196 (1948); but see *People v. Trowbridge,* 305 *N. Y.* 471, 113 *N. E. 2d* 841 (1953). As the Court of Appeals of Kentucky said:

[1] Defendant was not represented by counsel when the three witnesses saw him for pre-trial identifications. The United States Supreme Court has just held that a post-indictment viewing of an accused by a witness arranged by the police to determine identification is a "critical stage" at which the accused has a Sixth Amendment right to be represented by counsel. *United States v. Wade,* 388 *U. S.* 218, 87 *S. Ct.* 1926, 18 *L. Ed. 2d* 1149 (1967) and *Gilbert v. California,* 388 *U. S.* 263, 87 *S. Ct.* 1951, 18 *L. Ed. 2d* 1178 (1967). In the present case the prior identifications occurred before and not after the indictment. However, we need not decide whether the *Wade* and *Gilbert* rule applies to pre-indictment identifications because the Supreme Court the same day held for substantial reasons of policy that the rule would only apply to identifications made after June 12, 1967, the day the opinions were rendered: "We hold that *Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date." *Stovall v. Denno,* 387 *U. S.* ——, ——, 87 *S. Ct.* 1967, 1969, 18 *L. Ed. 2d* 1199 (1967). Defendant in the present case is therefore not entitled to assert the *Wade* and *Gilbert* exclusionary rule.

"Once a witness is allowed to testify that he made an identifying statement, further proof by other witnesses that he did in fact make it is just as relevant and competent as would be defensive proof to the effect that he did not make it." *Preston, supra*, 406 *S. W. 2d*, at *p.* 403.

Professor Morgan notes that when the maker of the statement of prior identification is a witness, there is no reason to exclude as hearsay testimony concerning the statement:

"If the witness testified that all the statements he made were true . . . then the only debatable question is whether he made the statement; and as to that the trier has all the witnesses before him, and has also the benefit of thorough cross-examination as to the facts which are the subject matter of the statement." *Morgan, supra*, 62 *Harv. L. Rev.*, at *p.* 196.

Under Rule 63(1) of the *Rules of Evidence* testimony about a prior identification is admissible so long as the maker of the statement is in court as a witness, and we find no limitation in the rule restricting the admissibility of such testimony solely to the maker of the statement. This result is in accord with the authorities given above.

We hold that because the identifying victims and eye-witnesses were in court as witnesses and subject to cross-examination, the testimony of Detective Conroy as to their extra-judicial identifications was admissible.

Defendant argues that the sentence for robbery of two to three years (suspended) entered on the record cannot be increased. The Appellate Division held that any sentence could be increased within 20 days of the appellate mandate under *R. R.* 3:7-13(a). This rule reads:

"The court may *reduce or change* a sentence by order entered not later than 60 days from the date of the judgment of conviction, or. if an appeal is taken within the 60 days, not later than 20 days of the issuance of the mandate by the appellate court." (Emphasis added)

██ We do not agree with the Appellate Division's interpretation of this rule. The rule authorizes a trial judge subject to time limitations to "reduce or change" a sentence. We

read this language to sanction reconsidered leniency and not severity. The word "reduce" obviously points to this interpretation; the word "change" seems directed only to differences in kind and not degree (*e. g.* fine in lieu of imprisonment): the omission of express authority to increase sentences in the context of the rule is highly significant. We conclude that this language does not authorize a trial judge to increase a sentence previously imposed by him.

Under the common law a judge could not increase or decrease a sentence once it had gone into operation. *State v. Addy*, 43 *N. J. L.* 113, 116 (*Sup. Ct.* 1880). Our *R. R.* 3 :7–13 (a) modifies the common law by allowing a trial judge to reduce or change a sentence within time limitations, but does not empower him to increase sentences. *Cf. State v. Laird*, 25 *N. J.* 298, 307 (1957). A rule which purported to allow a trial judge to increase a sentence previously imposed would raise serious problems under the constitutional right to be free from double jeopardy. See *United States v. Benz*, 282 *U. S.* 304, 307–310, 51 *S. Ct.* 113, 75 *L. Ed.* 354, 356–358 (1931); *Ex parte Lange*, 18 *Wall.* 163, 173, 21 *L. Ed.* 872, 878 (1874); *United States v. Rosenstreich*, 204 *F.* 2d 321 (2 *Cir.* 1953); *State v. Laird, supra*, 25 *N. J.*, at *p.* 312; *State v. Tyler*, 88 *N. J. Super.* 396, 405–406 (*App. Div.* 1965), *cert.* den. 384 *U. S.* 992, 86 *S. Ct.* 1898, 16 *L. Ed. 2d* 1008 (1966).

However, we do not agree with the defendant that the mistake by which a sentence for robbery of two to three years (suspended) was entered on the record cannot be corrected. Our rules allow correction of certain mistakes:

"Clerical mistakes in judgments, orders or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time and after such notice, if any, as the court orders." *R. R.* 3 :7–14.

The letter of the trial judge previously referred to indicates that he intended to sentence defendant to 10 to 15 years for the robbery conviction and intended that the two to three year

suspended sentence be given for the atrocious assault and battery. No fundamental right of defendant will be violated if an inadvertent clerical-type error is corrected, and he receives the sentence which the trial judge intended him to receive. The protection against double jeopardy bars double punishment for the same conviction, but does not prevent correction of a clerical error so that the sentence actually intended by the initial exercise of judicial discretion may be given a defendant. The Constitution does not prevent correction of inadvertent errors in sentencing. See *Bozza v. United States*, 330 *U. S.* 160, 166–167, 67 *S. Ct.* 645, 91 *L. Ed.* 818, 822 (1947).

On the state of the record before us we cannot be certain as to what caused the sentence for robbery to be mistakenly made under the atrocious assault and battery conviction. We therefore feel it necessary to remand the question of sentencing to the trial judge so that he may, on notice to defendant, make a determination in accordance with the following instructions: 1) If the judge intended to sentence defendant to 10 to 15 years for robbery and through an inadvertent error this sentence was entered as though made for the atrocious assault and battery conviction, the mistake can be corrected under *R. R.* 3:7–14. We add here that if the judge intended to sentence defendant on the atrocious assault and battery conviction to two to three years (suspended), then this sentence should likewise be entered. 2) If the mistake was not one which can be corrected under *R. R.* 3:7–14 (*e. g.* if the trial judge intended to give the longer sentence for atrocious assault and battery thinking it a more serious offense than the robbery, and his mistake was in believing he could impose a sentence of 10 to 15 years for atrocious assault and battery), then the sentence entered for robbery of two to three years (suspended) cannot be increased. Also, under this contingency, the sentence of 10 to 15 years entered for atrocious assault and battery would have to be set aside because of the illegality noted by the Appellate Division, and the judge should enter any legal sentence thereon that he deems fit.

The other arguments made by defendant need no discussion as they are plainly without merit.

For the foregoing reasons the judgment of the Appellate Division sustaining the convictions for robbery and atrocious assault and battery is affirmed, and the case is remanded to the trial judge for a sentencing determination in accordance with our instructions.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 7.

*For reversal* — None.