171 N.J. Super. 427 (1979)
409 A.2d 821
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDWARD JOSEPH RYAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 1979.
Decided December 4, 1979.
*432 Before Judges BISCHOFF, BOTTER and DWYER.
Susan Slovak, Assistant Deputy Public Defender, argued the cause for appellant (Stanley C. Van Ness, Public Defender; Diana Johnston, Assistant Deputy Public Defender, of counsel and on the brief).
Rocky L. Peterson, Deputy Attorney General, argued the cause for respondent (John J. Degnan, Attorney General; Edwin H. Stern, Deputy Attorney General, and Rocky L. Peterson, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by BOTTER, J.A.D.
This appeal concerns a defendant who served part of a State Prison sentence before being released on probation for drug treatment pursuant to R. 3:21-10(b). Defendant thereafter violated probation. The issues are (1) whether the trial judge could properly sentence or resentence defendant after the probation violation to a greater sentence than defendant was serving when he was placed on probation and (2) whether defendant is entitled to credit for time spent on probation. State v. Cunningham, 143 N.J. Super. 415 (App.Div. 1976), with which we agree, upheld a higher sentence imposed after violation of probation in similar circumstances. However, State v. Williams, 167 N.J. Super. 203 (App.Div. 1979), certif. granted 81 N.J. 272 (1979), held that a defendant who was released on probation after serving part of his sentence has a constitutional right to credit against his remaining prison term for time spent on probation. We reach a different result as to this issue in the case at hand.
*433 The beginnings of this case are found in the guilty pleas entered by defendant to two indictments and one accusation charging him with five counts of breaking and entering with intent to steal and three counts of larceny. In addition, defendant pleaded guilty to the disorderly persons offense of stealing charged in a municipal complaint. As a result, on January 4, 1974 defendant was sentenced to State Prison for concurrent terms, the longest being three to five years. A concurrent six-month term in the Monmouth County Correctional Institution was imposed for the disorderly persons offense. Defendant was given credit for nine days spent in custody. In an unreported opinion we upheld the sentences in an appeal in which defendant urged that they were excessive.
After serving seven months in custody, defendant's motion under R. 3:21-10(b) to suspend his sentences was granted as of August 1, 1974, and he was placed on probation and transferred to a drug treatment center where he resided until some time in September 1974. Thereafter, in February 1977 defendant was cited for violating probation. He pleaded guilty to two of the three charges, namely, abscond from probationary supervision and failing to report since January 5, 1976, and changing his residence without permission and leaving the State for more than 24 hours without permission. Sentence was imposed pursuant to N.J.S.A. 2A:168-4. Defendant received various concurrent sentences for terms of five to seven years and two to three years, respectively, for the crimes charged in the indictments and accusation. In addition, he was sentenced to a concurrent term of six months in the Monmouth County Correctional Institution for the disorderly persons offense.[1] Defendant was given credit for 219 days spent in custody.
*434 On this appeal defendant contends that, notwithstanding his violation of probation, the imposition of a higher sentence than that originally imposed after he had begun to serve his prison sentences contravenes the double jeopardy clauses of the United States Constitution and the Constitution of New Jersey. In addition, defendant contends that these sentences were excessive and an abuse of the trial judge's discretion.
Similar double jeopardy claims were considered and rejected in State v. Cunningham, 143 N.J. Super. 415 (App.Div. 1976), and, as indicated above, we concur in its holding. Suspending a defendant's prison sentence, whether before any part of a custodial sentence has been served, as in In re White, 18 N.J. 449 (1955), or after part has been served, as in State v. Cunningham, supra, and placing a defendant on probation, is done pursuant to legislative authority. As part of the legislative scheme, N.J.S.A. 2A:168-4 permits the imposition of any sentence that could have been imposed for the underlying crimes after a probation violation has occurred. The court in In re White, supra, spoke of this sentence as a "new" sentence. 18 N.J. at 456. Surely, it is a sentence that replaces the original sentence, so that the original sentence must be viewed as provisional or tentative in nature when it has been suspended in part or in whole and probation imposed. See Roberts v. United *435 States, 320 U.S. 264, 274, 64 S.Ct. 113, 118, 88 L.Ed. 41, 47 (1943) (Frankfurter, J., dissenting).
In Roberts, supra, 320 U.S. at 274-275, 64 S.Ct. at 118-119, 88 L.Ed. at 46-47, Mr. Justice Frankfurter argued that it should make no difference whether the sentencing judge fixes a prison term which is suspended or fixes no term at all and merely suspends all sentencing before placing a defendant on probation. The third variant is the case at hand, where a prison term has been imposed and was partially served before the court, at defendant's request, suspended the balance of the term. In all three situations the legislative scheme attaches the same consequences to a violation: a new sentence can be imposed for the underlying crimes to the limits allowed by law. The probation violation permits a judge to revoke probation and compel execution of the original sentence; it also allows the judge to vacate the original sentence and impose any sentence that could have been imposed at the outset. In re White, supra, 18 N.J. at 454. When, as here, a defendant moves to suspend the prison term which he is serving and for release on probation, he must be taken to accept the probation laws that he invokes.
We recognize the general rule that double jeopardy attaches when a defendant begins serving his sentence, so that he cannot be subjected to multiple punishments for the same offense. Ex parte Lange, 85 U.S. (18 Wall.) 163, 174, 21 L.Ed. 872, 878 (1874); North Carolina v. Pearce, 395 U.S. 711, 730-732, 89 S.Ct. 2072, 2091-2092, 23 L.Ed.2d 656, 672-674 (1969). Normally, a sentence which has begun cannot be set aside and a higher sentence imposed. Id.; State v. Matlack, 49 N.J. 491, 501-502 (1967), cert. den. 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 606 (1967). However, where on appeal defendant's conviction is reversed and his sentence vacated, defendant can be given a more severe sentence upon reconviction than originally imposed, so long as his subsequent conduct justifies the higher sentence and retaliation for taking an appeal has not motivated the new *436 sentence. North Carolina v. Pearce, supra, 395 U.S. at 723-726, 89 S.Ct. at 2079-2081, 23 L.Ed.2d at 668-670. By analogy, a sentence imposed after probation has been violated can reflect the added basis for evaluating defendant's amenability to reform, namely, his response to probation. Roberts v. United States, supra, 320 U.S. at 276, 64 S.Ct. at 119, 88 L.Ed. at 48 (Frankfurter, J., dissenting). That experience may reveal that the sentences originally imposed were too lenient. On the other hand, a defendant has it within his power to avoid resentencing and reincarceration by complying with the conditions of probation. We see no reason to condemn this flexibility in sentencing when defendant is given the advantages of probation. It does not permit an arbitrary increase in a sentence unrelated to a defendant's subsequent conduct. See Roberts v. United States, supra, where three justices, dissenting on a different issue (the interpretation of the federal Probation Act), opined that there was no constitutional bar to increasing a suspended sentence after probation has been violated; but the majority of the court did not reach this issue. Double jeopardy concepts should not condemn the imposition of a new sentence in place of the suspended sentence as part of a state's sentencing plan when a defendant violates conditions of probation imposed on his release from prison. Of course, defendant must be given credit for time served against the new sentence. North Carolina v. Pearce, supra, 395 U.S. at 718, 89 S.Ct. at 2077, 23 L.Ed.2d at 665.
Apart from the constitutional issue, defendant contends that R. 3:21-10(b) was not intended to authorize an increase in sentence under any circumstances. Defendant cites State v. Matlack, 49 N.J. 491 (1967), cert. den. 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 606 (1967), in support, as well as a general comment to this effect in the Report of the New Jersey Supreme Court's Committee on Criminal Practice, 98 N.J.L.J. 321, 343 (1975). However, these references are not pertinent. The Committee on Criminal Practice cited Matlack for the proposition that R. *437 3:21-10 was not intended to authorize an increase in sentence as part of a sentence modification "unless the original sentence is the result of a mistake of a clerical nature." 98 N.J.L.J. at 343. The Matlack court did not address itself to a suspension of sentence and imposition of probation; it was not concerned with sentencing under N.J.S.A. 2A:168-4 for a violation of probation. In Matlack the trial judge had imposed a sentence of 2 to 3 years for robbery and 10 to 15 years for atrocious assault and battery, clearly in excess of the authorized seven year maximum. The trial judge indicated that the sentence for robbery was "mistakenly made under the Atrocious Assault and Battery indictment and the sentence should be corrected." 49 N.J. at 494. The Supreme Court held that a sentence imposed cannot be increased except where a clerical error does not reflect the true sentence intended by the trial judge. If the trial judge in Matlack intended the longer sentence for the atrocious assault and battery, erroneously thinking it was a more serious offense than robbery, he could not increase the robbery sentence merely because the other illegal sentence had to be reduced. 49 N.J. at 502. Obviously, a probation violation was not involved.
Defendant also contends that N.J.S.A. 2A:168-1 and N.J.S.A. 2A:168-4 do not apply when service of a State Prison sentence is interrupted by a resentencing under R. 3:21-10(b). Defendant suggests that suspension of a sentence and imposition of probation may be made under the inherent power of the court independent of N.J.S.A. 2A:168-1 et seq. We disagree. N.J.S.A. 2A:164-17 deals with sentences to State Prison. It provides: "Nothing contained in this section shall be construed to repeal or affect the power of the courts to suspend the imposition or execution of sentence and place the offender on probation." N.J.S.A. 2A:168-1, which preceded the enactment of N.J.S.A. 2A:164-17, authorizes a court "to suspend the imposition or execution of sentence, and also to place the defendant on probation...." The court in Adamo v. McCorkle, 13 N.J. 561, 566 (1953), cert. den., 347 U.S. 928, 74 S.Ct. 531, 98 L.Ed. *438 1080 (1954), reviewed the history of probation in New Jersey and concluded that "the abundant coverage" of the Probation Act, now found in N.J.S.A. 2A:168-1 et seq., made it unnecessary and not useful to refer to cases which preceded the adoption of that act.
We see no reason to resort to our inherent power to suspend sentences when N.J.S.A. 2A:168-1 is broad enough to allow the suspension of a partially executed sentence so that a defendant can be placed on probation. It follows, therefore, as we held in State v. Cunningham, supra, that N.J.S.A. 2A:168-4 applies to a violation of probation imposed with the suspension of a sentence pursuant to R. 3:21-10(b).
Nor do we find persuasive defendant's reference to N.J.S.A. 2A:164-16 and the holding of State v. McCue, 148 N.J. Super. 425 (App.Div. 1977). State v. McCue involved a split sentence to a county institution, with probation imposed pursuant to N.J.S.A. 2A:164-16. By a split sentence we mean one in which a designated portion is ordered served in jail and the balance suspended, with defendant placed on probation. N.J.S.A. 2A:164-16 authorizes such a sentence, but it applies only to sentences to a county jail, penitentiary or workhouse. It also limits resentencing for a probation violation to "the remaining portion of the sentence originally pronounced," in contrast to the imposition of a new sentence as authorized by N.J.S.A. 2A:168-4. N.J.S.A. 2A:164-16 contrasts with N.J.S.A. 2A:164-17, which governs State Prison sentences. State v. McCue, supra, recognizes that N.J.S.A. 2A:164-17 does not authorize split sentences to State Prison. While release under R. 3:21-10(b) transforms a State Prison sentence into something resembling a split sentence, it affords no basis for limiting the sentence that can be imposed for a probation violation by analogy to the legislative prescription in N.J.S.A. 2A:164-16.
Thus, as in State v. Cunningham, we conclude that a court has the full authority granted by N.J.S.A. 2A:168-4 in *439 sentencing a probation violator who was released from State Prison pursuant to R. 3:21-10(b). In such a case, neither double jeopardy principles nor statutory limitations prevent a judge from sentencing a probation violator to any sentence that could have been imposed for the original underlying offense or offenses.
Defendant also contends that the trial judge erred in not allowing him credit against the new sentences for time served while on probation, in addition to time served in jail, in keeping with the holding of State v. Williams, supra.[2] In Williams the court reasoned that probation is "a form of punishment." 167 N.J. Super. at 207. In re Buehrer, 50 N.J. 501, 509 (1967), was quoted to show that probation has "sting" and that restrictions on the probationer are "punitive in quality." Thus, our colleagues in Williams concluded that in the circumstances of that case, compelling a defendant to serve his full sentence without credit for time spent on probation constitutes "multiple punishments for the same offense," interdicted by the double jeopardy clause of the Fifth Amendment. 167 N.J. Super. at 208. North Carolina v. Pearce, supra, was cited in support of that holding.
There is a factual distinction between Williams and the case at hand which may or may not be significant. In Williams, defendant was ordered released from prison pursuant to R. 3:21-10 and placed on probation with drug-treatment conditions. The State appealed this order without seeking a stay, and, while defendant was on probation it was reversed as an abuse of the trial judge's discretion. Defendant was remanded to serve his prison term. The court held that "refusing defendant *440 credit for the probationary period served ... would be to impermissibly increase his sentence previously imposed...." 167 N.J. Super. at 208.
The court in Williams may have thought it unfair that defendant's full sentence was to be extended by the several years he spent on probation without wrongdoing on his part, and without violating probation. In those circumstances it treated probation as a form of punishment for which credit was allowed against defendant's maximum sentence.
We question whether North Carolina v. Pearce, supra, compels the result reached in Williams. North Carolina v. Pearce did not involve credit for time spent on probation before or during a custodial term. Pearce involved a sentence imposed after the retrial of a defendant who had served part of his jail sentence under a conviction that was reversed on appeal. As noted above, Pearce held that on resentencing a defendant must be given full credit for time served under his original sentence, but that an increase in sentence may be imposed. Probation was not involved.
N.J.S.A. 2A:168-2 provides that conditions of probation may include reporting to a probation officer, restricting a change in residence, avoiding undesirable associations, and such other requirements as the court determines. In the case at hand defendant's release from prison was conditioned on his participation as a resident in a drug treatment center until "properly discharged by the authorities thereof and with the approval of the Monmouth County Probation Department...." The primary goal must have been rehabilitation since defendant was released from prison. Probation has been termed "a period of grace in order to aid the rehabilitation of a penitent offender; to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable." Burns v. United States, 287 U.S. 216, 220, 53 S.Ct. 154, 155, 77 L.Ed. 266, 268 (1932); Adamo v. McCorkle, supra, 13 N.J. at 563. The court in In re Buehrer, supra, while speaking of probation as "involving punishment," also said: "Probation assumes *441 the offender can be rehabilitated without serving the suspended jail sentence." 50 N.J. at 509. Nevertheless, however mild the restrictions on a probationer's liberty, probation may be viewed in some cases as essentially punitive in nature. Whatever the object, probation may be given one effect in one case and another effect in others. For example, in United States v. Rosenstreich, 204 F.2d 321 (2 Cir.1953), probation was viewed as punitive for the purpose of determining when defendant commenced serving his sentence.
We hesitate to allow the labels applied to the goals of probation  punishment, deterrence, rehabilitation  to determine the result in this case. It is preferable to look at the burdens of probation to determine the issue involved. Despite some restrictions on a probationer's movements, the probationer's condition, like a parolee's, is "very different from that of confinement in a prison." Morrissey v. Brewer, 408 U.S. 471, 482, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484, 495 (1972). In our view, "street time" spent by a defendant on probation cannot be equated with prison time. The probationer is free to move about, with some restrictions; he is encouraged to become and remain employed, N.J.S.A. 2A:168-2; and his reporting duties and other obligations are normally not so burdensome as to compare with incarceration. (A different view may be taken of time spent in a custodial setting, such as in a residential treatment institution, but we will deal with that later.) Clearly, the Legislature has not equated probation and prison time. In authorizing a custodial sentence after probation has been violated, the Legislature contemplated that a maximum custodial sentence could be imposed. N.J.S.A. 2A:168-4. The statutory scheme does not mandate credit for time spent on probation. Id.; see also N.J.S.A. 2A:164-16, discussed above; cf. R. 3:21-8; State v. Smeen, 147 N.J. Super. 229 (App.Div.), certif. den. 74 N.J. 263 (1977).
We conclude that defendant cannot demand credit for probation time as a matter of right. This is the prevailing view. *442 Hall v. Bostic, 529 F.2d 990, 991 (4 Cir.1975), cert. den. 425 U.S., 954, 96 S.Ct. 1733, 48 L.Ed.2d 199 (1976); Thomas v. United States, 327 F.2d 795 (10 Cir.1964), cert. den. 377 U.S. 1000, 84 S.Ct. 1936, 12 L.Ed.2d 1051 (1964); United States v. Guzzi, 275 F.2d 725 (3 Cir.1960); Kaplan v. Hecht, 24 F.2d 664, 665 (2 Cir.1928); Gehl v. People, 161 Colo. 535, 537, 423 P.2d 332, 334 (Sup.Ct. 1967); State v. Lowdermilk, 245 Ind. 93, 98, 195 N.E.2d 476, 479 (Sup.Ct. 1964); State v. Young, 273 Minn. 240, 245-249, 141 N.W.2d 15, 19-20 (Sup.Ct. 1966); Van Dorn v. Warden, Nevada State Prison, Nev., 569 P.2d 938 (Sup.Ct. 1977); see State v. Phillips, 443 S.W.2d 139 (Mo.Sup.Ct. 1969). In some cases where credit for probation time has been allowed the result was dictated by statute. People v. Stewart, 61 Ill. App.3d 111, 114, 18 Ill.Dec. 476, 479, 377 N.E.2d 1112, 1115 (Ct.App. 1978); State v. Murray, 81 N.M. 445, 447, 468 P.2d 416, 419 (Ct.App. 1970).
We had referred to defendant's residential status in a drug treatment center, Patrick House, in Jersey City. Defendant did not expressly contend that the time spent there should be considered separately in determining whether probation should be equated with prison time for credit purposes. On the record before us, however, we are unable to determine the extent to which defendant's liberty had been restrained during the two months or so that he spent there. The record indicates that he was on a methadone program, but tells us nothing more. Accordingly, in denying credit for probation time we do so without prejudice to defendant's right to move in the trial court for credit limited to the time he spent at Patrick House. See State v. Smeen, supra. We doubt that a sufficient showing can be made to annul on constitutional grounds a statutory scheme which does not allow for such credit. Out of caution, however, we prefer to leave the issue open until a record is made and the contention is specifically advanced in this or any other case.
*443 Lastly, we consider defendant's contention that after his conviction for violating probation, the sentence imposed was excessive and an abuse of discretion.
As background we note that defendant, born in July 1950, has a history as a juvenile and adult offender, with two previous indeterminate sentences to the Youth Correctional Institution Complex. His criminal conduct continued while on parole from that institution. He asserted that the property crimes in this case were committed to support his addiction to heroin.
We are primarily interested in his behavior after he was released from prison on August 1, 1974 and placed on probation. First defendant spent two months or less in Patrick House. (He claimed at the probation violation hearing that he successfully ended his use of methadone as well as heroin.) In June 1975 he was charged with growing marijuana in a field in Highlands, New Jersey.[3] That same month he was arrested in Seaside Heights for possession of stolen property and larceny. Defendant continued to report to the probation department until January 5, 1976, when he made his last visit and advised that his conviction for the disorderly persons marijuana offense was being appealed.
In February 1977 defendant was committed for 30 days for malicious damage and larceny. By then there were five or six detainers lodged against him by New Jersey and New York authorities. These included charges on two counts of burglary, one of possession of stolen property and one of jewelry theft in May 1976 in New York, a disorderly persons offense of contributing to the delinquency of a minor in May 1976, two contempt of court offenses, one of which was for failing to pay a fine, and larceny of a motor vehicle in October 1976 in Ocean County. *444 The New York authorities had initiated extradition proceedings against defendant. It appears that defendant had entered guilty pleas to the malicious damage charge and one of the contempt of court charges.
Defendant had served only seven months in jail for the underlying serious crimes before he was released on probation. Considerable leniency was accorded him; but he was unfaithful to the obligations of probation. We cannot say that the trial judge abused his discretion in the sentences imposed. See State v. Whitaker, 79 N.J. 503, 512-517 (1979); State v. Knight, 72 N.J. 193 (1976).
Affirmed.
NOTES
[1] Defendant contends that this sentence should be vacated because he had served more than six months in custody before he was released on probation. The State agrees with this contention, and we concur. The six-month term originally imposed for the disorderly persons offense was made concurrent with the sentences to State Prison. Thus, having served and been credited with 219 days in custody when he was transferred to the drug treatment facility, defendant had completed the sentence for the disorderly persons offense prior to that transfer. No part of that sentence remained to be suspended when defendant was placed on probation. Accordingly, we vacate the sentence imposed for the disorderly persons offense following defendant's violation of probation. This has no practical significance since defendant was given credit for more time spent in custody than the six-month concurrent sentence.

We note, also, that defendant has been released on parole. This does not moot the appeal, however, because the length of defendant's lawful sentence and credit for time served will determine the duration of parole.
[2] Even if defendant were entitled to credit for time served on probation, it would not include the time during which he absconded "while under supervision" and failed to report, since "the time during which [a probationer] remains away or hidden shall not be counted as part of his term of probation." N.J.S.A. 2A:168-1. Moreover, we would also have to contend with the fact that defendant violated probation in other respects, though not formally charged with such violation.
[3] The court below disregarded this charge, as we do, because defendant's conviction was ultimately reversed by us for inadequate proof of the test made of the vegetation defendant and a friend were seen tending.