**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0742-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

PAUL MYHAND, a/k/a
PEPA LARGE, PAUL L.
MYHAND, and POPPA LARGE,

    Defendant-Appellant.

_____

Argued May 23, 2022 – Decided July 15, 2022

Before Judges Messano and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 16-12-1020.

Kevin S. Finckenauer, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Kevin S. Finckenauer, of counsel and on the briefs).

Ali Y. Ozbek, Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney; Ali Y. Ozbek, of counsel and on the brief).

PER CURIAM

Just before 10:00 p.m. on July 24, 2016, Bernardo Medina-Villario and George Anga were en route via car to Angie's Bar in Paterson. As Medina-Villario parked his Toyota Camry on Broadway, defendant Paul Myhand entered the passenger's side, leaned over Anga, slapped Medina-Villario, and demanded the car. The Camry then struck two other vehicles, causing an accident. The victims of the accident told Officer Giuseppe Ciarla, of the Paterson Police Department (PPD), the driver appeared to be a "heavy-set black male." Meanwhile, Medina-Villario and Anga walked two blocks to PPD headquarters and reported the carjacking. Around 10:25 p.m., police observed defendant driving the stolen Camry; he was arrested without incident. Minutes later, Medina-Villario and Anga identified defendant during a show-up procedure conducted by Ciarla.

In December 2016, defendant was charged in a Passaic County indictment with two counts of first-degree carjacking, N.J.S.A. 2C:15-2(a)(1) and (a)(2). The matter was tried before a jury in February 2019. Defendant represented himself, with the assistance of standby counsel. Both carjacking victims testified on behalf of the State. The court ordered a mistrial after the jurors were

unable to reach a unanimous verdict and scheduled the matter for a status conference on March 4, 2019.

On the March 4 return date, defendant requested the earliest possible retrial date, arguing he had been detained on the present charges for approximately three years. The court scheduled the retrial for April 2, 2019, because the prosecutor and defendant's standby attorney were scheduled to commence three back-to-back trials on March 5, 2019 regarding another defendant. The court noted defendant in this matter could file a motion for a bail reduction.

On March 26, 2019, the court held another pretrial conference. The attorneys informed the court the trial in the other matter was ongoing and the third trial of the back-to-back matters would likely conclude in "mid to late June or early July." Defendant maintained he was ready to try the case pro se. In view of the attorneys' trial schedule in the other matter, the court scheduled a July 16, 2019 trial date in this case. Apparently, the other matter concluded ahead of schedule.[1]

---

[1] The record on appeal does not include transcripts of the March 4 and March 26 pretrial conferences.

A-0742-19

On April 2, the assignment judge attempted to facilitate an agreement between the parties, but his efforts were unavailing. He then sent the case to another judge, with directions to commence the retrial "immediately" – more than three months before the original retrial date of July 16, 2019.[2] Defendant's ensuing request for a thirty-day adjournment to obtain the transcripts from the first trial was denied by the trial judge.

The testimony spanned two trial days, during which the State called Medina-Villario, Officer Ciarla, and another PPD officer. Neither Anga nor the accident victims testified at the retrial. At the close of the State's evidence, the court appointed standby counsel to represent defendant for the remainder of the trial, spurred by his courtroom conduct. Defendant did not testify or present any evidence in his defense. In his closing remarks, the State commented on Anga's identification of defendant, which was introduced in evidence through the testimony of Ciarla.

The jury convicted defendant of both carjacking counts by threatening the use of bodily harm under subsection (a)(2). He was sentenced to an aggregate

---

[2] The receiving judge had begun the first trial but had taken ill during jury selection.

 A-0742-19

twenty-three-year prison term, subject to the No Early Release Act (NERA),

N.J.S.A. 2C:43-7.2.

Defendant now appeals, arguing:

POINT I

THE TRIAL COURT'S REFUSAL TO GRANT A THIRTY-DAY ADJOURNMENT OF THE RETRIAL SO THAT [DEFENDANT] COULD OBTAIN THE TRANSCRIPTS OF THE FIRST TRIAL REQUIRES REVERSAL OF [DEFENDANT]'S CONVICTIONS.

POINT II

THE ADMISSION OF THE NON-TESTIFYING VICTIMS' OUT-OF-COURT IDENTIFICATIONS VIOLATED [DEFENDANT]'S RIGHTS TO CONFRONT HIS ACCUSER AND CONSTITUTED INADMISSIBLE HEARSAY.
(Partially raised below)

A. The Admission Of, and Heavy Reliance On, the Out-Of-Court Show[-]up Identification by George Anga Violated [Defendant]'s Rights to Confront His Accuser, Was Inadmissible Hearsay, and Irreparably Damaged the Proceedings.

B. Officer Ciarla's Regurgitation of Identifying Information by [the] Drivers Who Were Struck by the Stolen Car Likewise Violated [Defendant]'s Right to Confront His Accusers and Constituted Inadmissible Hearsay.

5

POINT III

THE AGGREGATE TWENTY-THREE[-]YEAR SENTENCE IMPOSED BY THE TRIAL COURT WAS MANIFESTLY EXCESSIVE AND BASED ON AN IMPROPER WEIGHING OF [DEFENDANT]'S PREVIOUS CONVICTIONS, RATHER THAN A CONSIDERATION OF THE INSTANT OFFENSES FOR WHICH HE WAS BEING SENTENCED. ADDITIONALLY, THE COURT IMPROPERLY AWARDED RESTITUTION WITHOUT CONSIDERING [DEFENDANT]'S ABILITY TO PAY.

A. The Trial Court Improperly Focused on [Defendant]'s Criminal History, Rather than the Instant Offenses, in Sentencing Him to Two Concurrent Twenty-Three[-]Year Terms.

B. The Trial Court's Imposition of Restitution was Improper Because there was No Ability[-]to[-]Pay Hearing, and the Record Indicates that [Defendant] Would Not be Able to Pay the Amounts Owed.

Because we agree with the contentions raised in points I and II, our disposition makes it unnecessary to consider defendant's sentencing arguments raised in point III. We therefore reverse defendant's convictions, vacate his sentence, and remand for further proceedings.

I.

Defendant maintains the trial judge improperly denied his request for a thirty-day adjournment to obtain the transcripts from the first trial before the

6

A-0742-19

retrial commenced. Asserting the transcripts were "an integral and indispensable tool in preparing for a retrial," defendant argues the judge erroneously denied his adjournment request to obtain the transcripts pursuant to Britt v. North Carolina, 404 U.S. 226 (1971). We agree.

We acknowledge a trial court exercises broad discretion in controlling its calendar, and granting or denying an adjournment. See, e.g., State v. Hayes, 205 N.J. 522, 537 (2011). As part of its duties, a court "has the power to tightly control its calendar to assure the efficient administration of the criminal justice system." State v. Ruffin, 371 N.J. Super. 371, 388 (App. Div. 2004). However, the court's discretion should be based on a rational explanation, after considering relevant facts. State v. Kates, 216 N.J. 393, 396-97 (2014) (discussing necessity of a "reasoned, thoughtful analysis of the appropriate factors" in granting a continuance to seek counsel).

We have said, in the context of a civil trial, a denial of an adjournment must comport "with the fundamental principles of justice and fairness that must guide all judicial decisions." Berkowitz v. Soper, 443 N.J. Super. 391, 407 (App. Div. 2016). Those principles are no less applicable in a criminal trial. See State v. Garcia, 195 N.J. 192, 196 (2008) (holding the trial court abused its

discretion by failing to grant the defendant's request for an adjournment to arrange for the production of an imprisoned defense witness).

In Britt, the United States Supreme Court held "the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal."  404 U.S. at 227.  The Court "identified two factors that are relevant to the determination of need:  (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript."  Ibid.

As to the first factor, the defendant need not make a particular or strong showing of the value of the transcript.  Id. at 228.  Thus, "even in the absence of specific allegations it can ordinarily be assumed that a transcript . . . would be valuable to the defendant in at least two ways:  as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses."  Ibid.; see also Martin v. Rose, 525 F.2d 111, 113 (6th Cir. 1975) (affirming a petition for habeas corpus relief, stating "we can think of no more valuable document for defense counsel approaching a contested trial than the record of the previous trial of his client for the exact same crime with which he is charged again before the court of another sovereign").

8

Regarding the second factor, the adequacy of alternative devices should be decided on a case-by-case basis. Britt, 404 U.S. at 229. Because the same court reporter was employed for both trials and would "have read back to counsel his notes of the mistrial," the Court in Britt determined the defendant had access to "an informal alternative which appear[ed] to be substantially equivalent to a transcript." Id. at 229-30. That is not the case here.

In the present matter, the State claims Britt is inapplicable because defendant's argument is not based on his indigent status. We do not interpret Britt so narrowly. As defendant asserts, "transcripts are significant tools." Indeed, in deciding whether to grant defendant's request, the trial judge noted the importance of the transcripts, acknowledging: "[I]f a witness takes the stand here in this trial and says something different than they did at the last trial, you know, you can't get up and say, 'Well, wait a minute, didn't you say [something in the prior trial] because there's no record of it.'" The importance of the transcript as an impeachment tool is precisely what the Court in Britt embraced. 404 U.S. at 228.

At first blush, defendant's April 2, 2019 adjournment request to obtain the transcripts of his first trial may seem belated. The mistrial was declared on February 13, 2019; defendant failed to order the transcripts during the six-week

9

interim before the April 2 trial date; and the issue was not raised until April 2, when the trial judge asked defendant whether he ordered the transcripts. Further, defendant claimed he "didn't know he c[ould] get them," yet he possessed a transcript from the pretrial Wade[3] hearing, which he utilized to cross-examine Ciarla during the retrial. Defendant also insisted the retrial occur as quickly as possible. Finally, the trial judge noted the case was more than 600 days old, defendant was incarcerated, and the Administrative Office of the Courts had directed that such matters "are to be treated like speedy trial cases."

While we appreciate the trial court's efforts to move the matter to trial in view of the age of the case, multiple factors militate in favor of the adjournment request in the present matter: defendant sought the adjournment to obtain the transcripts; the trial date was moved up to April 2, 2019, only after the attorneys' other trials were completed ahead of schedule; and a thirty-day adjournment would have resulted in a retrial date well before the originally-scheduled July 16 trial date. Under these circumstances, the age of the case does not countervail the transcripts' value as impeachment tools in the retrial. See Britt, 404 U.S. at 228. We conclude the trial judge abused his discretion in denying defendant's application. See Hayes, 205 N.J. at 537.

---

[3] United States v. Wade, 388 U.S. 218 (1967).

In his second point, defendant contends his constitutional rights were violated by the out-of-court testimonial statements of Anga and the accident victims through Ciarla's testimony.   The State now counters Anga was unavailable to testify at trial and, as such, the admission of his out-of-court identification was proper under N.J.R.E. 804(b)(1)(A), and any error was harmless.   The State also argues Ciarla's testimony concerning the description of defendant given by the accident victims was not hearsay because the crime was ongoing when the statements were made.

According to Ciarla, around 10:24 p.m., he and his partner were with the carjacking victims at PPD headquarters, when they were dispatched to report to 16th Avenue and Carroll Street, where defendant was detained by police.  The officers brought the victims to the intersection to conduct show-up identifications of defendant.   Ciarla testified both victims identified defendant as the suspect.   Defendant objected to Ciarla's statement that the victims got out of the car and said, "'[T]hat's him, Paul Myhand.'"   Because the prosecutor clarified that the victims did not know defendant's name, the judge overruled the objection.

The following exchange ensued, without further objection.

11

PROSECUTOR: So, to the best of your recollection what do the victims say when they get out of the car and see the suspect?

CIARLA: "That's him. That's him."

PROSECUTOR: And to you that meant that was the person in the carjacking.

CIARLA: Yes.

PROSECUTOR: Did one of them say at [sic] first, did they say it at the same time?

CIARLA: One said it and the other one said it right after.

PROSECUTOR: Do you remember which one said it first?

CIARLA: The owner of the vehicle.

PROSECUTOR: Would that have been Bernardo [Medina-Villario]?

CIARLA: Bernardo.

PROSECUTOR: And George Anga also said . . . also identified him?

CIARLA: Yes.

PROSECUTOR: Did either of them have any hesitation or any . . .

CIARLA: No, as soon as I took them out of the car, they took a few steps away from the patrol unit and they said that was him.

12                                                A-0742-19

The prosecutor also elicited from Ciarla the description of defendant provided by the accident victims – neither of whom testified at trial. Referencing the accident report, the prosecutor asked, "And when you spoke to these people, did they give a description of the person who did this?" Ciarla replied: "A vague description. All they said was, 'Heavy-set black male in a vehicle.'" Defendant did not object to this testimony.

During recess after Ciarla testified, defendant advised the trial judge the prosecutor had "just notified" him that certain witnesses, including Anga, were "not coming into this trial." Notably, testimony had begun the previous day; Ciarla was the second witness called by the State. Although defendant did not raise a hearsay objection to any of Ciarla's testimony, defendant asserted he had "the right to cross-examine [his] accuser," particularly as to Anga. The judge informed defendant the decision to call witnesses rested with the parties, and that defendant could subpoena Anga, provided his production did not delay the trial beyond the end of that week.

During his summation, the prosecutor referenced Ciarla's testimony concerning Anga's identification several times:

> And Officer Ciarla testified under oath that as soon as they got to the scene, both these men got out of the car and said that's him. Pointed at [defendant] and said, "That's him. That's the man who carjacked us."

He said there was no hesitation. . . . I asked him who said it first, if you remember. He said that Bernardo Medina-Villario said it first. George Anga said it second. But there's no hesitation. They both get out of the car; they see the man immediately.

. . . .

. . . There was an out-of-court identification within an hour of the crime where Bernardo and George both say, "That's him. That's the man who did it."

. . . .

. . . Officer Ciarla said there were two victims. Bernardo Medina-Villario and George Anga. And he said that George Anga also identified the defendant at the scene. He was also in the car. He was the one that this man is l[ying] on . . . across his lap when he's hitting him.

They're also close. From that distance, he would have gotten a good view of him. And George Anga also gets out of the police car and says, "That's him. That's the man who did it."

. . . .

. . . We have two witnesses who thirty-six minutes after the crime, after being instructed only to make an identification if they're certain. They get out of the police car and say, "That's him. That's the man who did it."

The prosecutor did not comment on the accident victims' description of defendant given to Ciarla.

14

Following the prosecutor's summation, defense counsel objected to the comments concerning Anga's identification on hearsay grounds. The trial judge overruled counsel's objection, agreeing with the State that no objection was raised during trial, and Anga's prior identification was admissible as an unspecified exception to the hearsay rule. See N.J.R.E. 803(a)(3).

Although we generally defer to a trial court's evidentiary rulings, reviewing them only for abuse of discretion, "we do not defer to a ruling that is based on a mistaken interpretation of an evidence rule, or that misapplies the rule." State v. R.J.M., 453 N.J. Super. 261, 266 (App. Div. 2018). Our review of the trial court's application of the law to the facts, of course, is plenary. State v. Hubbard, 222 N.J. 249, 263 (2015).

Both the United States Constitution and the New Jersey Constitution guarantee defendants the right to confront witnesses and to cross-examine accusers. U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10; State v. Branch, 182 N.J. 338, 348 (2005). The Confrontation Clause reflects "a preference for the in-court testimony of a witness, whose veracity can be tested by the rigors of cross-examination." State ex. rel. J.A., 195 N.J. 324, 342 (2008). "Although the Sixth Amendment does not interdict all hearsay, it does prohibit the use of out-of-court testimonial hearsay, untested by cross-examination, as a substitute

for in-court testimony." Ibid.; see, e.g., State v. Medina, 242 N.J. 397, 415-16 (2020) (reiterating the principle that law enforcement witnesses "may not disclose incriminating information obtained from a non-testifying witness" and explaining the limitation is meant to avoid the implication that the officer's testimony is "'worthy of greater weight'" (quoting State v. Kemp, 195 N.J. 136, 155 (2008))).

One such exception is a prior identification made by the declarant-witness pursuant to N.J.R.E. 803(a)(3). Relevant here, the Rule provides certain statements are excluded from the hearsay prohibition provided "[t]he declarant-witness testifies and is subject to cross-examination about a prior otherwise admissible statement, and the statement . . . is a prior identification of a person made after perceiving that person if made in circumstances precluding unfairness or unreliability." The rationale underscoring the Rule is that a prior identification was "made when the events and sensory impressions are fresh in the mind of a witness." State v. Matlack, 49 N.J. 491, 498 (1967). If the person making the identification is a witness at trial, that person's testimony, third-party testimony, and exhibits recording the identification are all admissible. Id. at 499-500; see also State v. Luna, 193 N.J. 202, 216 (2007) ("Although the prior identification would have been admissible under N.J.R.E. 803(a)(3), had the

16

housekeeper appeared as a witness, the State properly conceded on appeal that, in her absence, reference to the housekeeper's out-of-court statement was inadmissible hearsay.").

Because Anga did not testify at the retrial, Ciarla's testimony pertaining to Anga's identification of defendant was not admissible as an exception to the hearsay rule under N.J.R.E. 803(a)(3). Instead, admission of this testimony infringed upon defendant's right to confront Anga in violation of Crawford v. Washington, 541 U.S. 36, 49-51 (2004). The prosecutor's multiple references to Anga's identification in summation compounded the problem; the error was not harmless as the State contends. Indeed, defendant was convicted of both carjacking counts, including the count naming Anga as a victim.[4]

Nor are we persuaded by the State's argument, raised for the first time on appeal, that Anga's identification was admissible as a hearsay exception pursuant to N.J.R.E. 804(b)(1)(A). Relevant here, under this exception, a witness's prior trial testimony is admissible in a subsequent trial, when "offered against a party who had an opportunity and similar motive in the prior trial . . . to develop the testimony by . . . cross-examination." However, the exception is

---

[4] Although not raised on appeal, inexplicably, the indictment charged separate carjacking counts that reflected Medina-Villario and Anga each were victims of the same carjacking.

only available if the declarant is "unavailable," as defined in N.J.R.E. 804(a).[5]

Ciarla's testimony concerning Anga's show-up identification of defendant finds no support under this Rule.

---

[5] Absent certain circumstances not applicable here, "a declarant is 'unavailable' as a witness" under N.J.R.E. 804(a), if he or she:

> (1)  is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the statement; or
>
> (2)  persists in refusing to testify concerning the subject matter of the statement despite an order of the court to do so; or
>
> (3)  testifies to a lack of memory of the subject matter of the statement; or
>
> (4)  is absent from the trial, hearing, or proceeding because of death, physical or mental illness or infirmity, or other cause; and
>
>> (A)  the proponent of the statement is unable by process or other reasonable means to procure the declarant's attendance at trial, hearing, or proceeding; and
>>
>> (B)  with respect to statements proffered under Rules 804(b)(4) and (7), the proponent must be unable, without undue hardship or expense, to obtain declarant's deposition for use in lieu of testimony at trial, hearing, or proceeding[.]

A-0742-19

For reasons that are unclear from the record, Anga did not testify at defendant's retrial. The State made no mention of his unavailability during trial; its responding brief is no more illuminating.[6] Instead, the State argues defendant failed to cite any "New Jersey case that presents the requirements for establishing a witness as unavailable." But the onus was on the State to demonstrate Anga was "unavailable" under the criteria set forth in N.J.R.E. 804(a). Moreover, Anga's prior testimony concerning the identification was not introduced at trial; the State improperly elicited from Ciarla Anga's pretrial statements made during the show-up procedure. Because the State did not demonstrate Anga was unavailable under any of the criteria set forth in the Rule, Anga's testimony constituted inadmissible hearsay.

Finally, we turn to Ciarla's testimony concerning the accident victims' description of defendant. Although Ciarla testified the description given was "vague," Ciarla also told the jury the victims said the suspect was a "heavy-set black male in a vehicle." That testimony was improper under our Supreme Court's decision in J.A.

_____

[6] At sentencing, the State noted Medina-Villario and Anga were construction workers, who lost wages by testifying at the first trial, and Medina-Villario, in particular, wished to attend the sentencing hearing, but could not afford to leave work. No mention was made of Anga's unavailability for trial.

19

In J.A., the Court held the eyewitness's statement to the officer, made several minutes after the witness ended his pursuit of the robbers, did not qualify as a present sense impression exception to the hearsay rule under N.J.R.E. 803(c)(1) because it was not "made while or immediately after the [witness] was perceiving the event."[7] Id. at 336-40. The Court further found the witness's report to the officer "ran afoul of the Confrontation Clause" as a testimonial statement because "[t]here was no ongoing emergency — no immediate danger — implicating either the witness or the victim, both of whom were in the company of police officers" when the eyewitness made the statements the State sought to admit. Id. at 341, 348.

In interpreting the phrase "immediately after," the Court recognized a delay of mere minutes between the occurrence of an event and a declarant's recounting of that same event could take the statement outside of the exception. Id. at 339-40. According to the Court:

> For purposes of a present sense impression, a declarant's statement that "the blue sports car is going through the red light" or that "the blue sports car just went through the red light" (seconds ago) is different from a declarant's statement that "the blue sports car went through the red light ten minutes ago."

---

[7] Pursuant to N.J.R.E. 803(c)(1), a present sense impression is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it and without opportunity to deliberate or fabricate."

[Id. at 339.]

Thus, the J.A. Court held that relating the details of a crime "that occurred ten minutes earlier is not the equivalent of describing the crime 'immediately after' it occurred." Id. at 340.

Here, the unidentified accident victims did not testify at trial. The only evidence as to the timing of their observations was introduced through Ciarla's testimony. Ciarla testified he was dispatched to headquarters around 9:59 p.m. regarding the carjacking. Referencing the timestamp on the accident report, Ciarla testified at 10:16 p.m., one of the victims "came to headquarters to report that she was involved in a motor vehicle accident related to this carjacking incident." Because the victim gave the statement at headquarters, sometime after the incident had occurred, her description of defendant was based on the crime that had occurred earlier and did not qualify as a present sense impression exception to the hearsay rule under N.J.R.E. 803(c)(1); see also J.A., 195 N.J. at 340. It also appears by the time the accident victims reported the crime, they and the carjacking victims were no longer in harm's way. See id. at 348.

We recognize Ciarla's testimony concerning the accident victims' description of defendant was fleeting and not objected to by defendant. In isolation, we might be inclined to find the error was not "clearly capable of

21

producing an unjust result." R. 2:10-2 (providing, in pertinent part, "the appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial court").

However, we are convinced the cumulative effect of multiple hearsay errors committed during the retrial rendered the trial unfair. See State v. Sanchez-Medina, 231 N.J. 452, 469 (2018) ("Even if an individual error does not require reversal, the cumulative effect of a series of errors can cast doubt on a verdict and call for a new trial."); see also State v. Weaver, 219 N.J. 131, 155 (2014) ("When legal errors cumulatively render a trial unfair, the Constitution requires a new trial"). "Our obligation is to ensure that defendant had a fair trial." State v. Jenewicz, 193 N.J. 440, 473 (2008).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION