145 N.J. Super. 79 (1975)
366 A.2d 1327
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANTONIO PRATTS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1975.
Decided October 27, 1975.
*81 Before Judges ALLCORN, KOLE and E. GAULKIN.
Mr. Edward J. Dimon, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Solomon Rosengarten, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, *82 Attorney General, attorney; Mr. William Welaj, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by EDWARD GAULKIN, J.A.D., Ret., Temporarily Assigned on Recall.
Defendant was convicted by a jury of robbery (Count 1), robbery while armed (Count 2), and the unlawful possession of a pistol without the requisite permit, in violation of N.J.S.A. 2A:151-41(a) (Count 3). On February 25, 1974 the trial judge sentenced defendant to consecutive sentences in State Prison, 2 to 3 years on count 1, 1 to 2 years on count 2, and 1 to 2 years on count 3, totaling 4 to 7 years, all consecutive to a sentence which defendant was to serve on an unrelated conviction. Defendant's counsel argued that count 3, the unlicensed pistol charge, merged in count 2 and therefore a separate sentence upon count 3 was without basis. After considering the matter, the judge, on February 28, 1974, vacated all three sentences and sentenced defendant anew. This time he reimposed the sentence of 2 to 3 years on count 1, but increased the sentence on count 2 to 2 to 4 years, again consecutive as before and consecutive to the sentence being served. Although he did not squarely so hold, he seemed to rule that there was no merger of counts 2 and 3; nevertheless, he said he would impose no sentence upon count 3.

I
Defendant's first ground of appeal is that the judge erred "when it did not permit the defendant to call a witness in his behalf." To investigate the validity of this ground of appeal we must determine (1) whether defendant did ask that he be permitted to call a witness and (2) if he did, was the judge obliged to permit him to do so. We find that defendant did not ask that he be permitted to call a witness; what he asked was that the judge direct the prosecutor or his own attorney to do so, and we hold that the judge properly refused the request.
*83 The witness in question was one Jose Perez, also known as Carabello. He was named in the indictment as a codefendant with Pratts, but apparently had pleaded guilty. Pratts was tried alone.
After the State had rested, Mr. Jacobs, defense counsel, asked for and was granted a recess to interview Carabello and to consult with defendant as to whether Carabello should be called and whether defendant himself would testify. Jacobs' strategy up to that point was to resist, attack and cast doubt upon the evidence offered by the State to identify defendant as one of the two robbers, and to create doubt in the minds of the jury that defendant was a participant in the robbery; and the record shows that he did it very effectively. (A previous trial on the same indictment resulted in a hung jury).
Jacobs had interviewed Carabello, who was in custody, and had intended to call him as a witness. However, he told the judge that the prosecutor
* * * got a statement from him that killed him as my witness. I haven't had a chance to go over there and talk to him and the defendant may not be taking the stand. * * * I have to go to my client and talk about this case before I can decide whether to put him on the stand. * * * I can't tell * * * [defendant] to take the stand until I talk to this other witness. * * *
The judge replied that he would have Carabello brought over "as quickly as possible and I will give you ten minutes with him. We will keep on going."
The jury was then excused and, since the State had rested, the judge asked whether counsel proposed to make any motions. Jacobs replied "There is a motion" but "I would rather get with the other. * * * I want to have the testimony and decide where we are going today." The judge replied, "I don't want to take too much time with delay," and agreed to "hold the motion until tomorrow" so that the taking of testimony could be concluded that day.
Jacobs then interviewed Carabello and conferred with Pratts. He then reported to the judge that "We are not going to present any testimony," and that defendant rested.
*84 There followed a discussion between counsel and with the judge about the admission and the editing of certain writings referred to during the trial. The judge said he would rule on those matters the next day. Then, this followed:
MR. FORMAN [Prosecutor]: It is my understanding the defense rested, your Honor.
THE COURT: Defense rests?
MR. JACOBS: Yes, judge.
MR. FORMAN: I will call some additional witnesses.
MR. JACOBS: Now so we understand clearly, there are no other witnesses to be called in this matter? Because I just heard Mr. Forman say he is going to call some witnesses.
THE COURT: By making that statement, I assume that he had some rebuttal witnesses on call. Therefore I am not going to permit you to open your case for any further witnesses, Mr. Jacobs, under those circumstances as long as Mr. Forman is not prepared to have anybody come in.
MR. JACOBS: Judge, I understand that.
THE COURT: Does that also apply to the prosecutor?
MR. FORMAN: My case is rested.
MR. JACOBS: O.K.
THE COURT: As far as I am concerned this case is at an end.
MR. JACOBS: O.K.
The judge then recalled the jury and said:
Ladies and gentlemen, we are going to recess until tomorrow morning to resume at 9 o'clock. The matter of testimony has just been concluded. There will be no additional testimony offered by either the State or the defense and therefore we intend to and expect to start tomorrow morning with summations and charge of the court.
The following morning Jacobs reported to the judge that he was having a disagreement with his client and he "asked * * * to be permitted to state something on the record." The judge having given his permission, and the prosecutor having left the courtroom, counsel told the judge that Pratts wanted Carabello called as a witness but that he believed he should not be called because
* * * I spoke to him in the County Jail yesterday and the day before. When I spoke to him the day before, which would have been *85 Tuesday, he indicated to me that he intended to give a statement in court which would exculpate or tend to exculpate Mr. Pratts. At that time I told him I would call him as a witness. The following morning I advised [the prosecutor] that the witness was there and he was about to give an exculpatory statement. At that point they sent somebody to the jail and he returned from the jail with a statement from this person. I just had it and I gave it to my client to read. I don't know where its whereabouts is now, but the statement says that Carabello, a person by the name of Juan and my client, went to Tony Marts to pull a job. That my client waited downstairs and that the other two pulled the job and they took off separately, left separately. After reading that, I, of course, became concerned. I sent one of the public defender's investigators in to take another statement, a statement of our own from the same person. Carabello gave me that statement during trial. I read that statement and that statement has certain curious elements to it which left me in doubt as to what the story was. * * * I had your Honor's permission to go over to the jail and speak to this person. * * * I went to the jail. I went directly upstairs. I spoke to the man for five or ten minutes. I confronted him with both statements.
In my opinion the man would be a very bad witness and would give no exculpatory information. His testimony would be more damaging than it would be beneficial to my case. I therefore decided not to call him. I then returned and explained that to Mr. Pratts and gave him the further advice that under the circumstances he should not testify. * * * In my opinion Carabello should not be called as a witness. Pratts should not testify. I gave Mr. Pratts that advice yesterday. I gave it to him in the presence of his wife and his mother. I asked him to think it over and I advised him rather strongly, I will admit, not to testify for a number of reasons, which I don't feel I have to go into now.
Apparently, it was after this conference that counsel and defendant agreed, the day before, not to put in any more testimony and to rest.
Mr. Jacobs continued:
Mr. Pratts has returned to court today. He is upset, apparently, with my representation, as he has been, through most of the trial. He feels now that Carabello ought to be called as a witness. I told Mr. Pratts I will defer to his wishes, but I want to state for the record at this time calling Carabello as a witness and framework (sic) or admitting that statement by consent, that statement being the prosecutor's statement would be a grave error.
At this point if Mr. Pratts wants to express his wishes to the court * * *.
*86 Then followed a lengthy discussion of which these are the pertinent parts:
THE COURT: Do you have anything you want to say, Mr. Pratts?
MR. PRATTS: No, sir. The only thing I have to say is I think if Carabello did implicate me in the robbery and did make a statement to the prosecutor, I would believe that the prosecutor would call him as a witness to have me found guilty in the case. The State has rested its case already and I don't understand. They didn't call him as a witness. If he did implicate me in the robbery, I imagine they would call him as a witness.
THE COURT: Each lawyer determines his own method. * * * To try their case. I can't compel him and you can't compel the prosecutor to call a witness.
MR. JACOBS: I don't think Mr. Pratts understands that any lawyer, whether it be Mr. Forman or I, when he looks at a witness and then looks at two completely contradictory statements given by that witness within a 24 hour time span begins to wonder whether or not it is safe to put that witness on the stand. I have evaluated the man. I don't think it is safe to put him on the stand. * * * The decision had to be made and I made it and my client is dissatisfied with it and I would just like the record memorialized so later 
THE COURT: Well, it doesn't appear that he is as dissatisfied as it appears to me that he questions the court why this witness wasn't called by the state, which answer should not come from me. I don't know. Is there anything else you want to say, Mr. Pratts?
Up to this point it is perfectly clear that Pratts was not asking that he be permitted to call the witness, but rather that the judge instruct either the prosecutor or Mr. Jacobs to call the witness. Defendant continued:
Yes, the witness states that I and another guy went to Tony Marts to pull a job and him and the other guy went and pulled the job and left in separate cars. They went somewhere else. I was downstairs. He is not implicating me whatsoever in the prosecutor's statement at all and I think he should be called as a witness because this man can clear me of this charge. Whether his credibility is good or not I don't know. I know he knows that I didn't pull the job and this man admitted to the guilt of this crime and admitted that I had nothing to do with it whatsoever.
THE COURT: Were you there?

*87 MR. PRATTS: I was at Tony Marts, yes.
THE COURT: Were you there with these other two?
MR. PRATTS: Yes.
THE COURT: Or weren't you?
MR. PRATTS: I was with them more or less. I gave them a ride to Tony Marts. I didn't have nothing to do with the robbery though.
MR. JACOBS: Excuse me, judge, I imagine everything he is saying is being said without prejudice.
THE COURT: Yes, of course. Whatever he is saying will not be used against him now. Of course, not. What do you want now, Mr. Pratts, what is your request?
MR. PRATTS: I request that he be 
THE COURT: Mr. Jacobs indicated to me that you were dissatisfied with his services?
MR. PRATTS: Why? I requested Mr. Carabello be brought in as a witness.
The last answer indicates that Pratts was not dissatisfied, and was not seeking the discharge of his counsel, but simply wanted the prosecutor or counsel to call the witness. The judge replied:
Well, I can't compel him to do that. And yesterday you had the opportunity to do this. Of course, as I understand it, I gave Mr. Jacobs and as he just stated an opportunity to talk to Carabello and as a trial tactic he decided not to call him. It is not for me to say that he is right or wrong * * *. Now, in addition to which yesterday as we were approaching 4 o'clock I made it crystal clear that there would be no testimony today. * * *
MR. PRATTS: I found out some things which made me change my mind. [This indicates that the day before he did agree that the witness not be called.]
THE COURT: Well, I am not going to change my mind. The case was closed yesterday. It is unfair to the state or to you, perhaps, if the testimony harms you. Whatever it may be, I am not going to reopen this case under any circumstances.
MR. PRATTS: I understand that.
THE COURT: I think I made it very clear.
MR. PRATTS: I just wanted to say this and I am glad that it is on the record in case I do get found guilty and I have a right for appeal. That is all I have to say.
THE COURT: What do you mean by that?
MR. PRATTS: That I wanted to bring a witness.
THE COURT: That is why I gave Mr. Jacobs an opportunity to make a statement and you made your statement and they are both on the record.

*88 MR. JACOBS: Judge, I have a suggestion. Before I make the suggestion let me state one more thing that I neglected to say. When I spoke to Carabello in the County Jail, Carabello told me among other things, that he and the fellow known as Juan were planning the robbery in Pratts' presence and I said to him, well, did Pratts know about it then? And his response was, "I don't know." When any lawyer hears that, judge, you can imagine what is coming next on cross examination. That is one of the major reasons I decided not to call Carabello.
In any event, I have a suggestion, I recall reading an Appellate opinion decision once some time ago where the court suggested that in instances of disputed testimony rather than possibly a reversal eventuating a remand, the court suggested it might be the appropriate procedure to take the testimony but not as part of the record. If the court feels that appropriate, I will participate.
THE COURT: No, I won't do that. The matter was completed yesterday. I thought I made that clear. I asked for anything else a couple of times and both you and the prosecutor agreed that there would be no testimony today.
MR. JACOBS: Well, I consent to that and my advice to my client stands, judge. I am just suggesting it if the court feels it appropriate.
As we have said, this colloquy does not add up to a request by defendant that he be permitted to call a witness, but only to a request to the judge that he direct the prosecutor or his own counsel to call the witness. Assuming without deciding, that in some instances a trial judge in a criminal case may call a witness as the court's witness, we know of no authority which would permit a trial judge to order counsel to call a witness whom defense counsel considers harmful.
Even if defendant's request be interpreted as being for permission to call the witness himself, it was not an abuse of discretion to refuse the permission.
To begin with, when a defendant accepts representation by counsel, that counsel has the authority to make the necessary decisions as to the management of the case. For example, in People v. Morris, 12 Mich. App. 411, 163 N.W.2d 16 (Ct. App. 1968), defendant demanded that his assigned counsel subpoena certain witnesses and that the trial (which had not yet begun) be adjourned for that purpose. *89 Counsel told the court that in his "professional opinion, these people could add nothing to the case"; that he had told defendant so but defendant "felt that he should have these other witnesses here, and I disagreed with him." The judge refused the adjournment, the witnesses were not produced, defendant was convicted and he appealed. The Court of Appeals affirmed saying:
* * * The record is clear that defendant agreed to be represented by court appointed counsel and at no time did he attempt to have assigned counsel dismissed from the case. Further, there is no claim on appeal that trial counsel was incompetent. It was the defendant himself who asked that the trial be postponed so that certain witnesses could be subpoenaed, contrary to the advice of the attorney he had accepted to conduct his defense.
The defendant cannot simultaneously assert his right to court appointed counsel and conduct his own defense; therefore, we do not consider the issue to be whether there was an abuse of discretion, but rather, who was responsible for the conduct of the defense. The case of People v. LaMarr (1965), 1 Mich. App. 389, 136 N.W.2d 708, is controlling on this point. We said in the LeMarr Case, p. 393, 136 N.W.2d p. 710:
"This matter was summarized well in the case of Rogers v. United States (CA 10, 1963), 325 F.2d 485, [488]:
"`The right to counsel by an indigent accused of crime embraces the right to representation at all times and during all proceedings where the fundamentals of due process are involved. He has a right to be cautioned, advised, and served by counsel so that he will not be a victim of his poverty. But he has no right to continuous service, nor to counsel of his choice, nor to dictate the procedural course of his representation.' (Emphasis supplied.)
"This Court concurs."
It is noteworthy that, in People v. Morris, counsel declined to call the witnesses because they were unimportant. Here counsel refused to call Carabello because his testimony might be damaging. Therefore the principle laid down, in People v. Morris, applies with even greater strength here.
When a defendant represented by counsel seeks to participate in the conduct of the case, he may do so only with the permission of the judge. Such joint action is to be avoided wherever possible. State v. Sinclair, 49 N.J. 525, *90 551-552 (1967). And, as was said in State v. White, 86 N.J. Super. 410 (App. Div. 1965):
We conclude that, while a defendant ordinarily has the right to conduct his own defense without the aid of counsel, the determination of whether a defendant to whom counsel has been assigned may be permitted to participate in the trial of the case, the extent of his participation and the procedure to be followed when it is permitted, are matters resting in the sound discretion of the trial judge. The right of an accused to represent himself, with or without the assistance of counsel, is not so absolute that it must be recognized when to do so would disrupt the business of the court or jeopardize a fair trial of the issues. Among the factors to be considered in determining whether such a request should be granted are whether: (1) allowance of the request could interfere with the orderly trial of the case; (2) such procedure will receive the cooperation of counsel for the accused * * *. * * * The determination of the trial judge on this issue will not be reversed in the absence of a showing of abuse of discretion. [at 418-419]
In the case at bar defense counsel pressed upon the judge that the witness should not be called. If the judge had directed that the witness be called and defendant were then convicted, defendant doubtless would have argued that as a ground for reversal. In State v. White, supra, defendant requested leave of court to cross-examine a witness after his assigned counsel had finished his cross-examination. The request was granted. Thereafter the judge permitted defendant to participate further in the trial, and he even summed up after his own counsel had summed up. Nevertheless, he sought to have his conviction reversed on the ground that "the trial court abused its discretion when it allowed him to participate with assigned counsel in the defense of his own case. * * * he alleges that it constituted plain error * * *." Id. at 415.
Here both sides had rested, and the judge had made it emphatic that the case was closed and no further testimony would be taken. The prosecutor had stated he had some rebuttal witnesses. Presumably upon the assurance by Mr. Jacobs and the court that both sides rested, the prosecutor released his rebuttal witnesses. In State v. Gray, 101 N.J. *91 Super. 490, 494 (App. Div.), certif. den. 52 N.J. 484 (1968), defendant elected not to testify and then, the next day, he changed his mind and asked to be permitted to testify. The trial judge refused to reopen the case. We held that there was no error. Incidentally, in Gray it was also contended that defendant was denied effective counsel at his trial because he failed to subpoena a witness. This argument too was found to be without merit. See also, State v. Slobodian, 120 N.J. Super. 68, 78 (App. Div.), certif. den., 62 N.J. 77 (1972).
To sum up, we find no merit in this ground of appeal.

II
Defendant contends that the judge "erred when he increased the defendant's sentence for armed robbery at the resentencing."
When defendant was first sentenced on February 25, 1974, defense counsel argued that the conviction on Count 3 (the unlawful possession of a pistol without the requisite permit contrary to N.J.S.A. 2A:151-41(a)) merged with the conviction on count 2 (robbery while armed) as an included offense, and therefore a separate sentence could not be imposed on count 3. The judge said he would consider the question. Nevertheless, on that very day he signed a judgment sentencing defendant to State Prison for 2 to 3 years on count 1 (robbery, contrary to N.J.S.A. 2A:141-1), 1 to 2 years on count 2, and 1 to 2 years on count 3, all consecutive and consecutive to a 3-5-year sentence imposed upon defendant for an unrelated charge.
On February 28 defendant again appeared before the judge, with counsel. The record leaves us uncertain whether or not the judge concluded that there was such a merger; certainly, he made no express ruling thereon. The State thinks he ruled there was such a merger, and seeks to have that ruling overturned; defendant thinks he did not so rule and that his failure to do so was error.
*92 The judge said, in effect, that since he had decided that defendant should be sent to prison for 4 to 7 years consecutive to the 3-5-year sentence already upon him, and since there was a question about count 3 being merged with count 2, he would impose the 4 to 7 years on the first two counts and fix no sentence on count 3. He said:
I have reconsidered the sentence given by me on the third count, alleging possession of a weapon without a permit, and I have made some research concerning my right to sentence on the third count in view of the first and second count, and the allegations contained in those two counts. Mr. Jacobs has assisted the Court and discussed * * * State vs. Jones, 94 New Jersey Super, 137, this is a case which deals with a weapon, a knife, and does not include a question of obtaining a permit as required by law.
At the outset, [on February 25] I had determined after hearing the Defendant and Mr. Jacobs speak on the Defendant's behalf that a total sentence, in my opinion in this case, would be four to seven years consecutive to the sentence of three to five years he is presently serving in the New Jersey State Prison. Therefore, I'm going to resentence the Defendant and still maintain and follow what I had in mind originally, that the Defendant receive a total of not less than four years nor more than seven years on the violation of the statute, and on the return of the jury verdict finding the Defendant guilty on all three counts.
When counsel said defendant "no longer stands convicted of three crimes, but of two * * *," and it was unfair to resentence him to 4 to 7 years on the two, the judge replied:
I don't agree with that. He stands, as far as I'm concerned, he stands convicted of three crimes, but the fact that the law may require the crimes for which he was convicted he should not be sentenced on because of a possible merger, then I don't agree with that (sic). There are three crimes committed in this case * * * and I'm going to sentence him and I have given  if I were giving additional consideration before sentence, the sentence would still be four to seven years consecutive to each other and consecutive to the sentences he is now serving. * * *
He then vacated the February 25 sentences and imposed the sentences now challenged, concluding:
* * * I will not impose any sentence for the conviction by the jury on the third count, which alleges possession of a weapon without *93 a permit. The intention of the Court, as I have already stated, was that I wanted to issue a sentence of not less than four years nor more than seven years to the Defendant in total, to run consecutive to the sentence now being served of not less than three years or more than five years in the New Jersey State Prison. That's the intention of the Court.
On February 28 the judge signed a new judgment which stated:
* * * the defendant be and is re-sentenced. Sentence of February 25, 1974 is hereby vacated. Defendant committed to the New Jersey State Prison at Trenton for a term of not less than two and no more than three years on the first count, sentence to run consecutively and not concurrently to sentence now being served, not less than two and no more than four years on the second count, sentence to run consecutively and not concurrently to sentence on the first count, no sentence on the third count.
We hold that, having signed the judgment of conviction on February 25, the judge had no authority, under the circumstances of this case, to increase the sentence on count 2. R. 3:21-10 permits a judge to reduce a sentence or to correct legal or clerical errors, but not to increase an otherwise legal sentence embodied in a judgment of conviction. State v. Matlack, 49 N.J. 491, 500-501, cert. den. 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 606 (1967).
At common law a sentence could be increased at any time during the term of the court in which the judgment was rendered, but not after defendant entered upon the execution of a legal sentence. State v. Matlack, supra; State v. Laird, 25 N.J. 298, 304-305 (1957). However, we know of no New Jersey case in which a sentence was increased.
The expiration of our terms of court has no effect upon whatever power our courts have. R. 1:30-2(a). We need not decide whether a judge may increase an announced sentence before he signs the judgment of conviction, R. 3: 21-5; cf. R. 3:21-4, for here the judge sought to increase *94 the sentence after he had signed the judgment of conviction. We hold that he had no power to do so, whether or not defendant had begun to serve his sentence.
We hold that the offense charged in count 3 did not merge into that charged in count 2. Count 3 charged that on the day of the robbery Pratts did unlawfully have in his possession a pistol without first having obtained the requisite permit to carry it. The evidence plainly shows, and it is not disputed, that the gun was brought to the scene of the robbery by one of the robbers. Under these circumstances, it is clear that there was no merger. State v. Morales, 127 N.J. Super. 1, 4 (App. Div. 1974); cf. State v. Leibowitz, 22 N.J. 102, 108 (1956); State v. Tumbiolo, 28 N.J. Super. 231 (App. Div. 1953), certif. den. 14 N.J. 495, cert. den., 347 U.S. 948, 74 S.Ct. 647, 98 L.Ed. 1095 (1954). See also, State v. Humphreys, 54 N.J. 406 (1969).
The State argues that the trial judge obviously acted on the belief that there was a merger and that he imposed the increased sentence on count 2 because of that erroneous belief, and if we set aside the increased sentence on count 2 we should restore all of the original sentences. However, as we have said, all of those sentences have been vacated. We could remand the case to the trial judge for the imposition of new sentences not to exceed those originally imposed. However, that would still leave debatable the question of what the trial judge meant when he said he would impose no sentence on count 3. It might be argued that he intended that there be a suspended sentence on count 3. In any event, we have the authority to impose new sentences here, R. 2: 10-3, and we shall exercise that power to avoid further delay and possible complications. We order that the sentence on count 1 be 2 to 3 years and on Count 2, 1 to 2 years, both consecutive to each other and consecutive to the sentence of 3 to 5 years previously imposed upon defendant. On count 3, sentence is suspended.

*95 III
Defendant's final ground of appeal is that the judge committed reversible error when he did not permit defense counsel to cross-examine a juror who, defendant charged, was prejudiced against defendant and his family. When the charges were presented to the judge by motion supported by affidavits, the judge questioned the juror in the presence of defense counsel, and satisfied himself that the charges against the juror were unfounded. However, he did not permit counsel to cross-examine the juror or to present witnesses. We find no error here. The charges leveled against the juror were too nebulous to call for a greater investigation than the judge conducted.
The judgment is affirmed. The sentences are as above set forth.