**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5600-17T5

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GREGORY T. ISAZA,

    Defendant-Appellant.

_____

> Argued January 9, 2019 – Decided January 25, 2019
>
> Before Judges Ostrer and Currier.
>
> On appeal from Superior Court of New Jersey, Law Division, Hudson County, Accusation No. 17-08-0812.
>
> Ruth E. Hunter, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney).
>
> Alanna M. Jereb, Assistant Prosecutor argued the cause for respondent (Esther Suarez, Hudson County Prosecutor, attorney).

PER CURIAM

In this SOA appeal, see R. 2:9-11, defendant contends: the court was not authorized to increase the term of probation it previously imposed orally; defendant was denied an appropriate restitution hearing at which to set the amount of the victim's loss; and the court erred in finding that defendant was able to pay the restitutionary amount of $15,180. We agree, and therefore reverse and remand.

## I.

Defendant pleaded guilty to a single-count accusation charging third-degree aggravated assault. N.J.S.A. 2C:12-1(b)(7). The August 30, 2017, plea agreement did not specify a sentence the prosecutor would recommend. Instead, it provided, "Free to speak. Defendant to apply for PTI [pretrial intervention]. No contact with [the victim]. Restitution, if any, to be determined at sentencing." At his plea hearing, the court noted that defendant might not gain admission to pretrial intervention. However, if defendant did not, the judge stated, "[I]t's most likely that [he] would get probation."

Defendant was not admitted to PTI. At defendant's subsequent sentencing hearing on February 2, 2018, the court found, at the State's suggestion, aggravating factors three – stating defendant posed a "minor risk" of reoffending – and nine – finding a general need to deter defendant. See N.J.S.A. 2C:44-

1(a)(3), (9). The judge inquired about aggravating factor two (gravity and seriousness of harm and victim's vulnerability), N.J.S.A. 2C:44-1(a)(2). Noting that the victim suffered a broken jaw, the judge asked if "the victim [was] on the ground when the strike took place." Assured by the prosecutor that the issue was disputed, the court expressly declined to find factor two.[1]

As for mitigating factors, the court found factor seven (no prior delinquency or criminal activity, or law-abiding life for a substantial period), N.J.S.A. 2C:44-1(b)(7), which the court characterized as "mild," because defendant had prior contacts with the juvenile justice system in 2008 and with the municipal court in 2015 and 2017. The court also found mitigating factor ten (amenability to probationary treatment). N.J.S.A. 2C:44-1(b)(10).

Finding the aggravating and mitigating factors in equipoise, the court imposed a two-year term of probation and barred contact with the victim.

The court then turned to the issue of restitution. The prosecutor stated the victim had medical bills of $15,180, of which $10,000 remained after Charity Care or other sources. The defense attorney declined to stipulate to that amount

---

[1] The record does not reflect the basis of the prosecutor's response, which was at odds with a signed statement by defendant admitting, "I hit him once, after he was on the floor."

A-5600-17T5

and insisted upon a hearing, after questioning whether the State double-counted the victim's expenses. The court agreed to schedule a restitution hearing.

Over the next four months, the court reconvened three times. At the May 4, 2018, hearing, the court advised the State that the victim needed to appear to testify as to the expenses he incurred.

At the June 8, 2018, hearing, the prosecutor assured the judge that the Rules of Evidence did not apply. The court permitted the State to introduce into evidence, without a live witness to lay a foundation, various medical and hospital bills. The court admitted an April 5, 2018, affidavit from the victim, asserting he incurred the bills to treat his assault-related injuries and requesting $15,180 in restitution. He denied receipt of Charity Care or any other assistance.[2] The prosecutor sought court approval of this amount.

Defense counsel still insisted upon the victim's appearance. The court ruled that the victim must appear and be subject to cross-examination, or the State must provide a "very, very detailed" certification as to what the victim incurred, the amount attributable to defendant, and whether the victim had insurance or attempted to mitigate his damages.

---

[2] In a separate, unsworn letter dated May 22, 2018, the victim contended he owed $20,000 in medical bills. In his April 28, 2018, "victim impact information" form, he requested $25,000 in restitution.

Also at the June 8 hearing, defense counsel asked the court to reduce the probationary term to one year. The prosecutor did not specifically respond to the request, but asked the court to find aggravating factor two (contrary to his previously stated position), as well as factors three and nine, and "sentence the defendant to a term of probation." The court did not rule on either request.

At the next hearing two weeks later, defense counsel asked the court to dispense with any restitution because the victim failed to appear. The victim also did not provide the detailed certification that the court had requested. Counsel again asked the court to impose a one-year term of probation because "effectively he's been on probation since August, you know, for ten months already, because he's been coming to Court at least once a month and staying out of trouble just like he would have to if he was on probation."

Apparently disregarding its oral sentencing from February 2018, the court proceeded to sentence defendant anew to a five-year term of probation instead of a two-year term, after making new findings of aggravating and mitigating factors. The court did not expressly acknowledge that it was vacating its original sentence and reasoning, nor did it justify its decision to reconsider. This time, the court found aggravating factor two, based solely on the fact that the victim suffered a broken jaw. The court again found factor three, although it found

"very little risk" of reoffending, and factor nine, after expressly rejecting factor six (extent of prior criminal record).

As for mitigating factors, the court added factor six, based on defendant's restitution obligation, subtracted mitigating factor seven, but again found factor ten. This time, the court concluded that the mitigating factors outweighed the aggravating factors (in contrast to the February finding that the factors were in equipoise). Nonetheless, the court increased the term of probation to five years, stating that if defendant performed well on probation, he could apply for a reduction. "If you pay back the victim, if you're employed, if you stay out of trouble, I'll consider it. . . . I think one year is a little bit light. Five years is certainly on the highest end, but I'm going to leave that open to terminate early if you do well."

The court then proceeded to address restitution, over the defense's objection, despite the victim's absence. The court found the victim had established that he incurred $15,180 in medical and hospital costs, but it rejected the victim's request for substantially more.

As for defendant's ability to pay, the court acknowledged that defendant was physically unable to work because he was recently stabbed in the arm. Defendant was then twenty-one years old, had a high school education, and in

6

the past had worked only intermittently through a staffing agency earning $10 hourly. Although the prosecutor suggested that defendant pay $100 to $150 a month, the court ordered defendant to pay the full financial loss of $15,180 over a five-year period – equating to $253 a month.

## II.

First, we address the increase in the probationary term. We recognize that when the court increased the term, the judgment of conviction was not yet entered and, apparently, defendant had not formally begun reporting to probation to begin service of the sentence (although the court acknowledged his timely reporting to court resembled such reporting). See State v. Matlack, 49 N.J. 491, 501 (1967) (noting that "[u]nder the common law a judge could not increase or decrease a sentence once it had gone into operation"); State v. Pratts, 145 N.J. Super. 79, 93-94 (App. Div. 1975) (holding that the court did not have the power to increase a sentence after entry of the judgment of conviction), aff'd o.b., 71 N.J. 399 (1976).

Notably, the panel in Pratts expressly declined to "decide whether a judge may increase an announced sentence before he signs the judgment of

7

conviction." Id. at 93.[3]  In State v. Moore, 178 N.J. Super. 417, 428 (App. Div. 1981), the trial court clarified a sentence before entry of the judgment of conviction.  The court had imposed a life sentence for murder without designating it as concurrent or consecutive to an existing sentence.  Id. at 421. Noticing its omission the same day, the court alerted the defendant that it would reserve decision on the issue, and, ultimately, declared the new sentence would be consecutive.  Id. at 426.  We held that even if the consecutive sentence were deemed an increase in sentence – a premise we rejected because there was no presumption of concurrent sentences under the circumstances – the increase was permissible, because no judgment of conviction had been entered nor had the sentence gone into operation.  Id. at 428.

However, Moore does not resolve the general question preserved in Pratts. First, the panel found that the trial court had not, in fact, increased a sentence. Second, Moore involved a point of ambiguity in the oral sentence, which the

---

[3]  We understand the question to pertain to imposition of a legal sentence, since a court may correct an illegal sentence at any time before the sentence is completed.  State v. Shubert, 212 N.J. 295. 309-13 (2012).  Courts in some other states have held that a legal oral sentence may not be increased, even before commencement of the sentence.  See Lee R. Russ, Annotation, Power of State Court, During Same Term, to Increase Severity of Lawful Sentence – Modern Status, 26 A.L.R. 4th 905 § 8 (1983 & Cumulative Supp. 2019) (reviewing decisions).

court promptly recognized the same day it imposed the oral sentence. By contrast, in this case, there was no inherent ambiguity in the court's oral sentence of two years of probation, and the court did not promptly reserve decision. Instead, it sua sponte increased the oral sentence four months after imposing it. Furthermore, our Rules of Court "modif[y] the common law by allowing a trial judge to reduce or change a sentence within time limitations, but do[] not empower him [or her] to increase sentences." Matlack, 49 N.J. at 501; see R. 3:21-10 (outlining procedural and time restraints for modifying a sentence); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 3:21-10 (2018) (stating that "since the purpose of the rule is leniency, a sentence may be decreased pursuant thereto, but cannot be increased unless the original sentence is the result of a mistake of a clerical nature").

However, we need not resolve whether a court may ever increase an oral sentence before it enters a judgment of conviction or the defendant commences service. Even if a court is empowered to do so, it must notify the defendant that it intends to reconsider its sentence, and it must provide compelling reasons to do so. Cf. R. 3:21-10(c) (requiring notice of reduction or change of sentence, and entry of reasons on the record). The court failed in that respect. We recognize that both the prosecutor and defense counsel addressed the sentence

at both June hearings. However, defense counsel sought a <u>reduction</u> in the initial probationary term and the prosecutor did not expressly request an increase.

The court also failed to provide grounds for reevaluating the aggravating and mitigating factors. Further, the finding of aggravating factor two constituted double-counting, as it relied solely on the nature and significance of the victim's injury – a broken jaw – which was an element of the underlying offense of aggravated assault. <u>See</u> N.J.S.A. 2C:11-1(d) (stating that a "significant bodily injury" is one that "creates a temporary loss of the function of any bodily member or organ or temporary loss of any one of the five senses"); <u>State v. Kromphold</u>, 162 N.J. 345, 353-55 (2000) (reviewing cases applying "prohibition against using evidence both for sentencing purposes and to establish an element of an offense").[4]

---

[4] We recognize that the court would have been justified in finding factor two if it found that defendant struck the victim while he was already on the ground, vulnerable, and incapable of resisting. <u>See</u> <u>State v. Lawless</u>, 214 N.J. 594, 610-11 (2013) (noting that the factor "focuses on the setting of the offense itself with particular attention to any factors that rendered the victim vulnerable or incapable of resistance"); <u>State v. Gallagher</u>, 286 N.J. Super. 1, 20 (App. Div. 1995). However, the court did not make that finding, despite defendant's signed admission. Alternatively, the court may have applied factor two if it found that the victim's injuries "were far in excess of that required to satisfy" the statutory elements. <u>State v. Mara</u>, 253 N.J. Super. 204, 214 (App. Div. 1992) (addressing aggravating factor one). But, the court did not make specific findings to support such a conclusion.

The court's ultimate determination that the mitigating factors outweighed the aggravating – which was more favorable to defendant than its finding four months earlier that the factors were in equipoise – was also inherently inconsistent with the court's decision to impose a more onerous sentence than it imposed four months earlier. Although we review deferentially a court's balancing of the aggravating and mitigating factors supported by credible evidence in the record, that standard does not apply if the court fails to provide sufficient insight into its decision, State v. Case, 220 N.J. 49, 65 (2014), or the court abused its discretion, see State v. Blackmon, 202 N.J. 283, 297 (2010), such as when a decision lacks a rational explanation, see Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (defining "abuse of discretion"). Here, the court provided no rational explanation or insight into why a more favorable balancing of aggravating and mitigating factors would produce a significantly more burdensome sentence.

Therefore, we reverse the imposition of the five-year probationary term and remand for entry of a two-year probationary term, consistent with the court's first oral sentence.

11

III.

Turning to the issue of restitution, we are constrained to reverse the court's determination of the victim's monetary loss, as well as defendant's ability to pay. As for the determination of loss, defendant properly challenged the foundation of the bills, questioning whether they all pertained to assault-related injuries.

Although the Rules of Evidence do not strictly apply in a restitution hearing, any restrictions on the presentation of evidence must be reasonable and the court must afford a defendant a meaningful opportunity to cross-examine, where warranted. "What the judge should hear or have presented for his consideration in such a proceeding is subject to the parameter of reasonableness; not technical rules of evidence. * * * Of course, in proceedings such as this a defendant is free to cross-examine witnesses and contradict them with other evidence." State v. Harris, 70 N.J. 586, 598 (1976) (quoting People v. Tidwell, 338 N.E.2d 113, 117 (Ill. Ct. App. 1975)).

We do not suggest that a victim invariably must be presented at a restitution hearing and subjected to cross-examination. A court must guard against subjecting a victim to intimidation, harassment or abuse. See N.J.S.A. 52:4B-36(c); see also State v. Kane, 449 N.J. Super. 119, 133 (App. Div. 2017). However, the record reflects numerous discrepancies that warranted the

12

requirement of a live witness. The prosecutor initially sought restitution of $10,000, asserting that Charity Care had defrayed part of the victim's bills. Yet, he shifted gears and adopted the victim's position, set forth in his affidavit, that he deserved $15,180, which he said Charity Care had not reduced. The victim himself presented three different amounts to the court: $15,180; $20,000; and $25,000. Under those circumstances, the State was obliged to allow defendant to cross-examine the victim, or a person who could testify, based on personal knowledge, that the medical costs related to the injury defendant caused, and to the amounts that remained due and owing.

Furthermore, the court's determination that defendant had the ability to pay $15,180 over five years lacked support in the record. Notably, the State suggested that defendant could pay between $100 and $150 a month, roughly half the $253 a month rate required by the court. Defendant had been unemployed since July 2017; he was temporarily disabled; he lacked any assets or other sources of income. Even if he regained employment through a staffing agency, the record provided an insufficient basis to conclude that defendant would have over $250 a month, after covering essential expenses, to pay toward restitution. See State v. Newman, 132 N.J. 159, 169-70 (1993) (discussing the ability-to-pay determination). We do not minimize the gravity of the victim's

A-5600-17T5

injuries, or the emotional and financial toll that defendant's admitted assault has imposed. Although restitution serves both a compensatory and rehabilitative purpose, it does not substitute for the victim's other civil remedies. State v. Masce, 452 N.J. Super. 347, 352 (App. Div. 2017); see also Newman, 132 N.J. at 173 ("Imposing a sentence of restitution that requires payment of more than a defendant can afford would frustrate the goal of rehabilitation.").

IV.

In sum, we remand for modification of the judgment of conviction by restoring the two-year term of probation that the court initially imposed. We also reverse the restitution order and remand for a restitution hearing where the victim or another appropriate witness is available for cross-examination. We also remand the matter for reconsideration of defendant's ability to pay. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5600-17T5